GEORGE SHOCKLEY, EMPLOYER, d. b. a., *vs.* HAMPTON W. KING, Claimant, p. b. r.

1. MASTER AND SERVANT—WORKMEN IN EMPLOYER'S BUSINESS HELD "PERSONS EMPLOYED" IN "EMPLOYMENT" WITHIN COMPENSATION LAW DEFINING "EMPLOYEE."

Only an "employee" defined by Workmen's Compensation Law, § 136, as a person under contract of hire is entitled to compensation, but under *sections* 135 and 141, providing that the act shall not apply to any employers or employees in any "employment in which less than five persons are employed," it is not necessary that five "employees" shall be employed to bring the employment within the act, the word "employment" meaning trade, business, or occupation and the term "persons employed" meaning persons engaged therein, so that, where a saw mill owner had three men working for him under contract of hire at the time of injury to one of them, and two additional men working to help him out because he was short of help, the act applied.

2. MASTER AND SERVANT—COMPENSATION CLAIMANT HELD NOT GUILTY OF DELIBERATE INDIFFERENCE TO DANGER.

The act of an inexperienced employee off-bearing lumber in a sawmill, in turning to the left instead of the right and thereby coming in contact with the saw and losing his hand *held* not to amount to a deliberate and reckless indifference to danger, which would bar recovery under the Workmen's Compensation Law, §129.

3. MASTER AND SERVANT—COMPENSATION BOARD'S DECISION ON QUESTION OF FACT CONCLUSIVE.

In a proceeding under the Workmen's Compensation Law, whether claimant refused employment suitable to his capacity *held* a question of fact on which the decision of the Board was binding on appeal.

4.  MASTER AND SERVANT—JUSTIFIABLE REFUSAL OF EMPLOYMENT DOES
    not PRECLUDE RECOVERY UNDER COMPENSATION LAW.

Under Workmen's Compensation Law, § 133, the employee's refusal of
employment does not preclude him from compensation, if, in the opinion of
the Board, the refusal was justifiable.

*(April* 13, 1922.)

PENNEWILL, C. J., HARRINGTON and RICHARDS, J. J., sitting.

*Henry Ridgely* and *George M. Fisher*, for defendant below,
appellant.

*Howard J. Cooke*, for plaintiff below, respondent.

Superior Court for Sussex County, February Term, 1922.

APPEAL from the Industrial Accident Board, No. 1, June
Term, 1921.  Claim No. 17,200.

Hampton W. King, the appellee, was injured when working
for George Shockley, the appellant, in his saw mill at Rehoboth
on April 7, 1920, with Herman King, Harley Johnson, Will Jack-
son, Frank Hamilton and Harvey Green.

It was admitted by Shockley that Hampton W. King, the ap-
pellee, Herman King and Harley Johnson were employed by him
at the time of the accident, under contract of hire for a valuable
consideration.

It appeared from the testimony, and was not disputed, that
Hampton W. King, the claimant, when engaged in taking a piece
of lumber from the saw, turned to throw it behind him, when
the carriage caught it and pulled him and the lumber backward
toward the saw, and as he fell, his right hand was caught in the
saw and cut off. King admitted that he turned to the left, and that
the place to which he was throwing the slabs was at his right.
He also admitted that Shockley offered him work after he was
injured, but claimed that he was not able to perform it.

Shockley admitted that Will Jackson and Frank Hamilton were
also working for him at his mill at the time of the accident, but
denied that they were under contract of hire. He testified, however,
that Jackson was helping in the regular work of the mill and doing

the same kind of work the others were doing. In answer to the question, "Who was he working for?" he said: "He just came there to help me out; he often helps me out that way." Shockley also testified, that Hamilton was "just helping me out," that he was working there hooking onto logs most of the time, and that he often helped him at the mill.

Jackson testified that Shockley told him the day before he went to work, "He could come and help him out, as he was short of help." Jackson said, "He had no idea of expecting anything," but in answer to a question of a member of the Board, "If Mr. Shockley thought your work was worth anything, then he would give you something, if not he would not pay you?" he answered, "Yes, sir, I was not thinking about money." Dr. Messick and the claimant testified that Jackson stated in their presence, that he had not been paid for his work done for Shockley, but that at the time he did the work he expected to be paid. Dr. Messick further testified that Shockley admitted to him that he had five men in his employ at the time of the accident, but this was denied by Shockley.

It appeared from the testimony of Shockley that Jackson and Hamilton worked for him only at times, to help him out, and that being short of help, Green was sent to the mill by his own employer, Jacob Thomas, on the day of the accident, because he knew that Shockley, who was cutting lumber for him, was short of help. Green had worked but a very short time when the accident accurred.

Shockley testified that the accident was caused by King's turning to the left instead of to the right; that he had cautioned him about being careless prior to that time, and "forwarned him against letting slabs getting caught in the saw," but had not noticed any carelessness on that day; that he had worked for him off and on for about three weeks. Four others testified to the carelessness of the claimant, and one of them (Green) said the person who was off-bearing should throw his lumber to the right instead of to the left.

The testimony showed that Shockley offered employment to the claimant after the accident, which the complainant said he did not accept because his arm was not well. Shockley testified that he made the offer in good faith and that what he wanted the claimant to do was simply to stay around and do such things as he could do.

Pennewill, C. J., delivering the opinion of the Court:

Shockley claims that the claimant is not entitled to compensation:

1. Because the employment in which his injury occurred was not within the compensatory provision of the Workmen's Compensation Law. 29 *Del. Laws, c.* 233.

2. Because his injury was due to his deliberate and reckless indifference to danger.

3. Because after the accident he refused employment suitable to his capacity procured for him by his employer.

The provisions of said law pertinent and material to the questions raised are as follows:

*Section* 135. "The following shall constitute employers subject to the provisions of this article: Every person · * * * excepting the employers mentioned in * * * *section* 141, * * *, having in his * * * service any employee as defined in * * *section* 136."

*Section* 136. "The term 'employee' as used in this article shall be construed to mean: Every person in the service of every natural person * * * under any contract of hire for a valuable consideration, but not including any person whose employment is casual and not in the course of the trade, business, profession, or occupation of his employer."

*Section* 141. "This article shall not apply to farm laborers, domestic servants, officers and servants of the state, or any governmental agency created by it, nor to their respective employers; nor to the employers or employees in any employment in which less than five persons are employed."

*Section* 129. "If any employee be injured * * * because of his deliberate and reckless indifference to danger * · * * he shall not be entitled to recover * * * under the compensatory provisions of this article. The burden of proof under the provisions of this section shall be on the defendant employer."

*Section* 133. "If an injured employee refuses employment suitable to his capacity, procurred for him, he shall not be entitled to any compensation at any time during the continuance of such refusal, unless in the opinion of the Industrial Accident Board, such refusal was justifiable."

*Chapter* 1, of the *Revised Code*, entitled "Construction of Statutes," directs that "All words and phrases shall be construed according to the common and approved usage of our language."

[1]   The testimony does not show that the employer had in his employment, at the time of the accident, five "employees," as defined in *section* 136, that is, five persons under contract of hire for a valuable consideration.

So that, the only question in this connection, is whether the words "persons employed," in *section* 141, mean only persons who are under contract of hire, or whether they may be construed to embrace persons who are not under contract of hire, but who, in conjunction wth an "employee" or "employees," are occupied or engaged in the regular business of the employer with his approval and under his direction and control.

*Section* 141 does not say the act shall not apply to employers or employees in any employment in which less than five employees, or persons under contract of hire, are employed, although the use of either term would have made the meaning of the section entirely clear. But the Legislature saw fit to use another and much more general term, to wit: "persons employed."

The word "employment" in said section unquestionably means trade, business, profession or occupation, and may not "persons employed" be construed to mean persons used or engaged therein? The meaning of the word "employee" is restricted by the definition contained in *section* 136, but the words, "employment" and "employed," are in a different section, are not restricted by definition or context, and they should, therefore, be given their common and generally approved meaning or usage.

That the word "employment" is more general than the word "employee," as defined in *section* 136, clearly appears from other parts of the act, where the word "employment" is used, as well as from its meaning as generally understood.

It should not be overlooked that the word "employee" as defined by *section* 136, was used to show who may be entitled to compensation under the act, but not to show what persons may be employed in any employment covered by the act.

No one but an "employee" could be entitled to compensation under the act, but it is not necessary that five "employees" shall be employed to bring the employment within the act.

We have no doubt that *section* 141 may be so construed, and, apparently, it may admit of a different construction, but considering the plain purpose of the act, we think it should be construed most favorably for the employee.

In support of their contention that the words "persons employed" mean "employees," counsel for the defendant employer argue that a contrary construction would make it impossible for the employer to know at times whether his business is within the act or not, because he could not know how many helpers he might have at a particular time or in a particular emergency. For example, if he had three "employees" he might at certain times need two more persons in his business for a day or shorter time, and if such persons made the five required to bring him within the act, he might be within it one day and out the next. Such being the case, it would be practically impossible for him to perform his obligations under the act respecting the insurance of his liability.

But it is apparent there would be the same uncertainty and embarrassment, if the employer's construction of *section* 141 were adopted, because there must be times and emergencies in the course of any business when the employer finds it necessary to hire workmen for a very brief period.

An employee, as defined by *section* 136, may be engaged for as short a time as a person who is not such an employee. If a person is employed, under contract of hire for a valuable consideration, to work for a day, or even a briefer period, in the employer's business, it would hardly be contended that such person would not be an "employee." The employer's difficulty then, in knowing where he stood with respect to the act, and in effecting insurance, would be just as great as if the temporary service was rendered by persons who were not "employees."

*Section* 136 contemplates, by implication at least, that a person may be an "employee" even though his employment is casual, if it is in the course of his employer's business. He is not an

"employee" if his employment is casual and *not* in the course of his employer's business.

After carefully considering the entire act, including the title, the court are of the opinion, that its primary purpose was the protection of the employee; that only a workman under contract of hire can be entitled to compensation thereunder, but if there are five persons employed at the time of an employee's injury, some of whom are not under contract of hire, but all of whom are working under the direction and control of the employer, as Jackson, Green and Hamilton were, the act applies.

This conclusion, we think, is consistent with *section* 135, which means that every person who has in his service *any one* under contract of hire shall be subject to the provisions of the act if there are *five persons employed* in his business.

The only reason that can be given for the requirement that five persons shall be employed to bring the employment within the act, is that the risk or hazard was considered to be proportionate to the number of persons employed. If such was the thought of the Legislature, it follows that it must have been contemplated that the danger to an "employee" would be the same whether his fellow workmen were under contract of hire or not, and that the act should apply in either case.

It is argued that such could not have been the thought of the Legislature, because the danger would be as great where farm laborers or domestic servants are employed, and they are exempted from the provisions of the act. But a reasonable explanation of the exemptions might be that the act could probably not have been passed without them.

As defined by *section* 136, the term "employee" does not include any person whose employment is causal and not in the regular course of the business of his employer.

It is apparent that casual employment, as used in the act, is immaterial to the present question, because the words were used in defining the term "employee." They have no application to persons employed who are not entitled to compensation under the act. And moreover, the reference is to an employment that

is not only casual, but not in the regular course of the employer's business. It is clear that the employment in question was in the regular course of the employer's business.

That the "Workmen's Compensation Law" of this state was intended to be very general and comprehensive in its scope and effect is apparent, not only from the purpose it was designed to accomplish, and the persons it was intended to protect, but also from its exemptions. The law would have embraced all professions, trades, businesses and occupations if none were exempted, and it does, therefore, embrace all that are not exempted.

Such being the case, the court feel it their duty to give the provisions in question such a reasonable and liberal construction as will carry out the real purpose of the Legislature. If not so construed, not only would its intent be defeated, but an employer could easily evade its application.

We do not say that every one who may happen to "lend a hand," or be temporarily working at a particular task, must be considered a "person employed" within the meaning of *section* 141, but we think persons working as Jackson, Green and Hamilton were at the time the claimant was injured should be so considered. The testimony clearly shows that all of them were working for Shockley, to help him out, because he was short of help. They were working at the time just as the "employees" were working, and under the immediate direction and control of the employer, who was short of help and required their services.

The situation was not at all like that where some one who happens to be standing by assists in lifting a log or in doing some other act incidental to the employer's business. That would be an independent act of a pure volunteer, who had no thought of working for the employer at all.

The common and generally accepted meaning of the word "employment" is business, trade, or occupation, and it would hardly be contended that every person engaged or working therein must be under contract of hire. The common and generally accepted meaning of the word "employ" is, "to make use of," "to give employment to," although another meaning is, "to hire."

Opinion.

A person is, therefore, commonly considered as employed when he is occupied or at work in the business or service of another. *Davis et al. v. Woods* (*Tex. Civ. App.*) 143 *S. W.* 950.

[2]   Appellant contends that the claimant is not entitled to compensation because his injury was due to his deliberate and reckless indifference to danger. This involves a mixed question of law and fact, but principally of law, because there is practically no dispute about what was done by the claimant in the performance of his work. He admits that he turned to the left when off-bearing the lumber that it was his duty to remove from the saw, and also admits that the place where he was to throw the lumber was at his right. Other witnesses testified that he was careless, and should have turned to the right. Upon this state of facts, the court would not be warranted in holding that the claimant's injury was due to his deliberate and reckless indifference to danger. The claimant had been performing the work a very short time, and while the danger may have been obvious, it is conceivable that a more careful workman, and one more experienced in the work, might inadvertently have turned in the wrong direction once at least, and thereby received injury. The employer testified that he had cautioned the claimant about being careless, prior to that time, and "forewarned him about letting slabs getting caught in the saw," but did not notice that he was careless that day. The employer did not say he had cautioned the claimant about turning to the left, or instructed him how to turn, and no one testified that he had turned to the left before. Assuming that he turned in the wrong direction at the time of the accident, and thereby placed himself in great danger, which he should have realized, and by the exercise of due care, might have avoided, still we do not think that his thoughtlessness or carelessness on the occasion of his injury, in turning to his left instead of his right can be regarded as so gross and inexcusable as to amount to a deliberate and reckless indifference to danger. It was not more deliberate and reckless indifference to danger than the act or conduct of the claimant in the case of *Colburn v. Nichols*, 7 *Boyce* 572, 109 *Atl.* 882, in which case this court affirmed the award to the Board.

[3]   The employer further contends that the claimant is not entitled to compensation because after the accident he refused employment suitable to his capacity.

This contention raises questions of fact purely, and no question of law at all. Did the employer offer the claimant employment? Was it refused? Was it suitable to the capacity of the claimant? It is not denied that employment was offered, nor that it was refused. The only question then is, was it suitable to the claimant's capacity? The claimant says it was not, because his arm was not well; the employer says it was suitable because the employment he offered was "to stand around and do what he could." Thus was raised an issue of fact upon which the testimony was conflicting; and this court has held that the decision of the Board should not be reversed under such circumstances, if there was any testimony upon which the decision could be reasonably based, applying the rule that is observed in a motion to set aside the verdict of a jury.

[4]   Another important fact to be considered, is, that under *section* 133, the employee's refusal of employment does not preclude him from compensation if, in the opinion of the Board, the refusal was justifiable. The Board awarded compensation, and by so doing held that his refusal was justifiable.

We have not referred to the cases cited by counsel, because they were not considered helpful in construing a provision of our own statute, one similar to which, so far as we know, not having been construed under the Workmen's Compensation Law of any other state.

For the reasons stated, the award of the Industrial Accident Board, made on the——day of—— A. D. 1920, that George Shockley pay to Hampton W. King compensation for his injuries is hereby affirmed.